1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

___ FILED ___ LODGED
___ RECEIVED
Mar 29, 2024
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

The Honorable Grady J. Leupold

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff

v.

JUSTIN CARNES
DEREK BERRY

Defendants.

CASE NO. MJ24-5092

COMPLAINT for VIOLATION

Title 21, U.S.C.
Sections 841(a)(1) and 841(b)(1)(A)

BEFORE the Honorable Grady J. Leupold, United States Magistrate Judge, United States Courthouse, Tacoma, Washington.

The undersigned complainant being duly sworn states:

## COUNT ONE

**(Conspiracy to Manufacture and Distribute Controlled Substances)**

Beginning at a time unknown, and continuing until at least March 28, 2024, in Pierce County, Washington, within the Western District of Washington, and elsewhere, JUSTIN CARNES, DEREK BERRY, and others known and unknown, did knowingly and intentionally conspire to manufacture and distribute controlled substances, including methamphetamine and N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propanamide (fentanyl), substances controlled under Title 21, United States Code.

COMPLAINT (USAO#2023R01225)
UNITED STATES V. JUSTIN CARNES - 1

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(206) 553-7970

1  It is further alleged that with respect to JUSTIN CARNES and DEREK BERRY, their conduct as members of the conspiracy charged in Count 1, which includes the reasonably foreseeable conduct of other members of the conspiracy charged in Count 1, involved 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21, United States Code, Sections 841(b)(1)(A).

It is further alleged that with respect to JUSTIN CARNES and DEREK BERRY, their conduct as members of the conspiracy charged in Count 1, which includes the reasonably foreseeable conduct of other members of the conspiracy charged in Count 1, involved 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 841(b)(1)(A).

All in violation of Title 21, United States Code, Sections 841(a)(1) and 846).

And the complainant states that this Complaint is based on the following information:

I, John Kewley, being first duly sworn on oath, depose and say:

**I.   INTRODUCTION AND AGENT BACKGROUND**

1.   I am a Special Agent of the Drug Enforcement Administration (DEA), currently assigned to the DEA Tacoma Resident Office (TRO) in the Seattle Field Division. I am a criminal investigator of the United States within the definition of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21 and Title 18 United States Code.

2.   Prior to my employment with the DEA, I worked as an Intelligence and Field Artillery Officer with the United States Army from August 2013 to April 2021. I received formal training at the DEA Basic Agent Training in Quantico, Virginia. The four-month Basic Academy included comprehensive, formalized instruction in, among

COMPLAINT (USAO#2023R01225)
UNITED STATES V. JUSTIN CARNES - 2

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(206) 553-7970

other things: basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations.

3. During my law enforcement career, I have been involved in investigations of criminal offenses, including the offenses involved in the current investigation. I have participated in criminal investigations of illicit drug trafficking organizations, ranging from street-level dealers to major dealers, to include Mexico-based drug trafficking organizations. These investigations have also included the unlawful importation, possession with intent to distribute, and distribution of controlled substances; the related laundering of monetary instruments; the conducting of monetary transactions involving the proceeds of specified unlawful activities; and conspiracies associated with criminal narcotics offenses. These investigations have included use of the following investigative techniques: confidential informants; undercover agents; analysis of pen register, trap and trace, and toll records; physical and electronic surveillance; wiretaps; and the execution of search warrants. Through exposure to these criminal activities and the persons involved, I have gained basic knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers during their criminal activities, including their use of cellular telephones and other electronic devices to facilitate communications while avoiding law enforcement scrutiny. I have participated in and helped plan the execution of search warrants of locations associated with drug traffickers and their co-conspirators, such as residences, storage facilities, and vehicles.

4. Additionally, I have authored and executed search warrants of various kinds and written reports in the course of investigations. These investigations have resulted in both state and federal prosecutions of individuals who have possessed, imported, or distributed controlled substances, including methamphetamine, heroin,

COMPLAINT (USAO#2023R01225)
UNITED STATES V. JUSTIN CARNES - 3

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(206) 553-7970

cocaine, suspected fentanyl pills, as well as the seizure of those illegal drugs and the proceeds from their sale.

5. This affidavit is made in support of a complaint charging Justin Carnes and Derek Berry with the offenses of Possession with Intent to Manufacture and Distribute Controlled Substances, namely methamphetamine and fentanyl.

6. The facts set forth in this Affidavit are based on my own personal knowledge and investigation; information gained through my training and experience as a law enforcement agent; information provided to me by or through other law enforcement agents, investigators, and individuals with knowledge of this matter; my own observations; and my review of documents and records related to this investigation.

7. Because the limited purpose of this affidavit is to establish probable cause, not every fact known to me, or to other investigators, is included herein. I have set forth the facts that I believe are necessary for a fair determination of probable cause for the charge alleged in this Complaint.

## II.   SUMMARY OF PROBABLE CAUSE

9. The United States, including the DEA, is conducting a criminal investigation of suspected drug trafficking involving JUSTIN CARNES and others. During this investigation, the DEA learned that CARNES, DEREK BERRY, and others known and unknown are involved in manufacturing and distributing quantities of methamphetamine and fentanyl in western Washington.

10. From approximately February 2023 to June 2023, TRO agents had been investigating a separate target suspected of drug trafficking. In June 2023, TRO agents served multiple search warrants on this other target of investigation and seized pound quantities of methamphetamine, fentanyl, a firearm, and thousands of dollars in U.S. currency. Upon searching the target's phone pursuant to a search warrant, agents uncovered text messages between the target and the user of a phone (Target Telephone 14 or TT14) in which the user of TT14 discussed supplying the target with pound quantities

COMPLAINT (USAO#2023R01225)
UNITED STATES V. JUSTIN CARNES - 4

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(206) 553-7970

of methamphetamine. Agents identified CARNES as the user of TT14 because CARNES had provided TT14 to agents as his phone number in a separate investigation in the summer of 2022.

**CARNES Arrested in Vancouver, Washington**

11. In October 2023, the Cowlitz Tribal Police Department (CTPD) arrested CARNES in the Vancouver, Washington, area for possession of a stolen vehicle. At the time of arrest, CARNES was renting a hotel room at the Ilani Casino Hotel. CTPD officers approached CARNES in the hotel parking lot as CARNES was getting into his truck (Target Vehicle 4 or TV4). CARNES ran from the officers, who had clearly identified themselves as police based on their uniforms, patrol vehicle with police markings, and verbal warnings identifying themselves as police. CTPD Officers were able to pursue CARNES as he fled across multiple lanes of traffic on Interstate Highway 5 (I-5). After detaining CARNES, officers notified the Ilani hotel staff of CARNES' arrest and the hotel staff sought to evict CARNES from the hotel. When hotel staff went to remove CARNES' belongings from the hotel room, hotel staff found pound quantities of suspected methamphetamine and fentanyl in CARNES' hotel room.

12. Following these events, CARNES admitted that he would buy up to 30,000 fentanyl pills at a time for roughly $0.40 per pill. CARNES also admitted that he would buy black tar heroin at a rate of $14,000 per kilogram, cocaine at a rate of $22,000 per kilogram, and fentanyl powder at a rate of $13,500 per kilogram. Through this investigation, law enforcement identified a phone number for CARNES' drug supplier, identified as Target Telephone 27 (TT27).

13. Law enforcement were also able to identify another of CARNES' sources of drug supply, the user of a Mexican phone number ending in 6617. Later in the investigation, agents also learned through an administrative subpoena that the Mexican phone number ending in 6617 was associated with an iCloud account that was also associated with another Mexican phone number ending in 6900.

COMPLAINT (USAO#2023R01225)
UNITED STATES V. JUSTIN CARNES - 5

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(206) 553-7970

14. Agents saw that during this timeframe, CARNES had his RV with him at the Ilani Casino bearing a Washington license plate CED5705 (TV7).

### CARNES Rented a Hotel Room Using a Fake ID to Store and Manufacture Fentanyl Pills

15. In December 2023, Lakewood Police Department (LPD) Officers saw a white Silverado parked at the Western Inn located off South Tacoma Way in Tacoma, Washington. The white Silverado bore a temporary registration tag that was for a different make and model vehicle. An LPD officer checked the VIN of the vehicle in question, which matched the VIN of a Silverado registered to CARNES and his girlfriend, Brittney Roberts. LPD officers confirmed with hotel staff that the Silverado was associated with a rented room. The room was rented using a fake driver's license. The license depicted CARNES but had someone else's date of birth and name.

16. LPD officers attempted to contact the occupants of the hotel room but were unsuccessful. Officers approached the back of the hotel and noticed that the sliding glass door, opening to the room in question, was open. Law enforcement searched the room pursuant to a judicially authorized search warrant. Inside, Law enforcement found and seized a pill press, suspected fentanyl pills, suspected fentanyl powder, and a stolen loaded handgun. CARNES and anyone else in the hotel room had already fled the scene.

### Phone Tolls Showed CARNES was in Frequent Contact with his Drug Supplier and Made Multiple Trips to Oregon

17. In the beginning of January 2024, TRO agents obtained a warrant from a Pierce County Superior Court Judge for location information and a pen register trap and trace device for two target telephones. One of the phones was believed to be used by CARNES (Target Telephone 17 or TT17) and the other was believed to be used by CARNES girlfriend, Roberts (Target Telephone 16 or TT16). Agents began receiving geolocation and pen data on January 9, 2024.

COMPLAINT (USAO#2023R01225)
UNITED STATES V. JUSTIN CARNES - 6

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(206) 553-7970

18. Agents saw both phones were in Salem, Oregon. During this period, CARNES' phone was in contact with the Mexican phone number ending in 6617 that was identified as CARNES' drug supplier for the Salem, Oregon, area. Between January 10, 2024, and January 20, 2024, CARNES' phone had a total of 55 communications with the Mexican phone number ending in 6617.

19. While the phones were in Salem, Oregon, a DEA agent drove by CARNES' residence. The agent did not observe any known target vehicles in the vicinity. A couple days later, electronic surveillance showed both target telephones move from the Salem, Oregon, area back to the area of CARNES' residence. A DEA agent and an LPD officer drove past the residence again and saw the Silverado parked on the street next to the residence, and two vehicles, including one registered to Roberts, parked in the driveway.

20. On January 23, 2024, electronic surveillance showed TT17 leave the area of CARNES' residence at around 10 p.m. TT17 moved along I-5 to the Portland, Oregon, area and stayed approximately 30 minutes. TT17 then moved back north on I-5 arriving in the Tacoma area around 3 a.m. TT17 had 10 communications, between 9:24 p.m. and 11:46 p.m., with a Mexican phone number ending in 6900 that, as described previously, was associated with the same iCloud account connected to CARNES' drug supplier in Salem, Oregon.

21. On January 25, 2024, electronic surveillance showed TT17 leave the area of CARNES' residence at around 11 p.m. TT17 followed a similar pattern as before and moved along I-5 to the Portland, Oregon area, stayed approximately 30 minutes, then returned to the Tacoma area around 4 a.m.

22. On February 1, 2024, agents and an LPD officer watched CARNES' residence in Puyallup, Washington, and saw they had a moving van parked in the driveway. Agents followed the moving van as it left Puyallup and drove to Kent, Washington, where surveillance was ultimately lost. Agents and law enforcement officers watched TT16 and TT17's geo-location data, which also moved to the Kent, Washington

COMPLAINT (USAO#2023R01225)
UNITED STATES V. JUSTIN CARNES - 7

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(206) 553-7970

area and continued to do so in the following days. Later in the investigation, agents learned that CARNES and Roberts moved to a residence in Kent, Washington (Target Location 3 or TL3).

23. On February 3, 2024, electronic surveillance showed TT17 leave the area of TL3 around 9:30 p.m., travel south to the Portland, Oregon area, stay approximately 30 minutes, and return to the area of TL3 arriving back around 3:30 a.m. Prior to TT17's movement, Roberts' TT16 had one call with the Mexico phone number ending in 6617 at 6:55 p.m. that same day.

24. On February 11, 2024, electronic surveillance showed TT17 leave the area of TL3 after 10:00 p.m., travel south to the area of Vancouver, Washington, stay approximately three hours, and return to the Tacoma area around 5:00 a.m. TT17 moved around the Tacoma and Spanaway areas for a few hours before returning to the area of CARNES' Kent residence at about 10:00 a.m.

25. Based on my training, experience, and knowledge of this investigation, I believe that the circumstances of each of the trips made by CARNES to Portland, Oregon, on January 23, January 25, February 3, and February 11, are consistent with CARNES conducting drug transactions by meeting with his drug source of supply in Portland and transporting the drugs back to the Western District of Washington.

**A Confidential Source Observed Security Footage of CARNES Manufacturing and Distributing Narcotics Out of a Residence CARNES Rented**

26. In the beginning of 2024, a Source of Information ("SOI 1")[1] informed an FBI agent that CARNES and Roberts were renting out a residence on a one-acre lot located in Kent, Washington 98042 (TL3). SOI 1 said he/she knew this because SOI 1 had a role in processing CARNES and ROBERTS rental application. SOI 1 told the agent

---

[1] SOI 1 has provided valuable and reliable information to DEA and Federal Bureau of Investigation (FBI) investigators for less than a year. SOI 1 has no criminal history and is not providing information to law enforcement in exchange for monetary compensation, favorable sentencing, immigration benefits, or any other form of reimbursement.

COMPLAINT (USAO#2023R01225)
UNITED STATES V. JUSTIN CARNES - 8

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(206) 553-7970

that TL3 had security cameras placed in various locations around the property and inside the garage of TL3. SOI 1 told the agent that CARNES and Roberts were made aware of these cameras during the rental application process.

27. SOI 1 told the agent that in the beginning of February 2024, SOI 1 looked at footage of a security camera in the garage of TL3. SOI 1 said he/she saw multiple brick-shaped objects that looked like they were made of a white powdery substance. SOI 1 said that individuals in the garage were breaking off small pieces of the unknown substance and acting in a manner consistent with smoking as if they were smoking the white substance. SOI 1 said he/she also saw stacks of cash and a firearm in the garage. SOI said he/she also saw what appeared to be a press that CARNES was using to form the brick-shaped objects. SOI 1 said that with these observations combined, SOI 1 believed the brick-shaped objects were some kind of drug.

28. SOI 1 told the agent that since CARNES had moved into TL3, there had been a lot of unknown vehicles and people coming to TL3 throughout all hours of the day and night. SOI 1 told the agent that during one interaction, SOI 1 saw via camera footage, CARNES mixing a white powder type substance in a bowl with an unidentified male standing next to CARNES. On the counter next to CARNES, SOI 1 saw, what appeared to be a handgun. SOI 1 described CARNES and the unidentified male having some kind of hand-to-hand exchange which included cash being passed from the unidentified male to CARNES. Following the exchange, CARNES and the unidentified male gave each other a fist bump. Based on my training and experience and witnessing multiple drug deals in prior investigations, I believe SOI 1 witnessed a drug deal in this instance and that CARNES had a handgun within his reach while the transaction took place.

29. On February 20, 2024, United States Judge Magistrate Brian A Tsuchida authorized a search warrant for TL3. DEA and FBI agents planned a day to execute the warrant, but CARNES and Roberts moved out of the residence a couple of days before the planned execution.

COMPLAINT (USAO#2023R01225)
UNITED STATES V. JUSTIN CARNES - 9

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(206) 553-7970

**Law Enforcement Identified a Storage Unit Belonging to CARNES (TL4)**

30. On February 23, 2024, phone location data placed CARNES in the area of Sales Road Storage facility in Tacoma, Washington. An agent observed TV4 parked in the southwest corner of the facility and CARNES' RV (TV7) backed into a parking spot in the northwest corner of the storage facility. Agents had previously observed CARNES in this RV on multiple occasions.

31. Over the next hour, agents watched CARNES and multiple unidentified individuals move around an open storage unit within the facility (TL4). Based on my training and experience, I know that drug distributors frequently use storage units to store their narcotics.

**CARNES Successfully Fled from Law Enforcement**

32. The morning of March 14, 2024, agents set up in the area of the Century Motel in Kent, Washington. At approximately 9:00 a.m. agents saw CARNES leave the motel lot driving TV4 in tandem with another vehicle.

33. TV4 drove to a shell gas station nearby where agents attempted to arrest CARNES. When an agent activated the lights and sirens of his vehicle, CARNES immediately began backing TV4 up with a panicked expression on his face. TV4 backed out of the gas station lot into oncoming traffic forcing multiple cars to stop in order to avoid a vehicle collision. TV4 then accelerated quickly and drove away fleeing from law enforcement.

34. Shortly after, electronic surveillance showed TV4 stopping in a parking lot in the middle of a residential neighborhood approximately a mile from the gas station. Agents drove by TV4 and saw that it was empty.

35. As agents began to look for CARNES, residents of a nearby house came out and told the agents that they saw a white male carrying a leather bag jump over the rear of their fence and exit their property on the other side where their driveway comes out to the road. Agents terminated their search for CARNES.

COMPLAINT (USAO#2023R01225)
UNITED STATES V. JUSTIN CARNES - 10

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(206) 553-7970

### CARNES Maintained Contact with his Drug Suppliers

36. According to phone tolls for CARNES' phone, he continued to communicate with TT27 (previously identified as one of his drug suppliers). Between March 1, 2024, and March 12, 2024, a phone used by CARNES had a total of 9 communications with TT27.

### CARNES Used the Mill Village Motel to Distribute Narcotics

37. An agent looked at the tenant roster for the Mill Village Motel in Eatonville, Washington, and saw that CARNES was listed as the tenant for room 113 (TL5). On March 28, 2024, electronic surveillance showed TV4 depart Eatonville at about 2:40 a.m. and go down to the area of Portland, Oregon. TV4 stayed approximately 30 minutes then drove back to Eatonville arriving at about 9:00 a.m. Pen register data showed CARNES had called his Oregon drug supplier (the Mexican phone number ending in 6617) the day prior.

38. When TV4 arrived back at the Mill Village Motel, an agent saw three unidentified individuals get out and go inside room 113 (TL5). These individuals would later be identified as BERRY, Haley Porter, and Joshua Logdson. Several minutes later, Porter carried multiple bags from TV4 into room 113. Agents also saw that CARNES' RV bearing license plate CED5705 was parked in an RV lot adjacent to the motel lot. Several minutes after TV4 arrived at the motel, agents saw Porter and BERRY exit room 113, walk over to the RV, and go inside.

39. Based on my training, experience, and knowledge of this investigation, I believe CARNES had multiple drug associates drive TV4 down to Portland, Oregon, in order to pick up a drug load. I believe that, following the drug pickup, TV4 drove back to the Mill Village Motel and that the occupants of TV4 took the drugs into room 113 (TL5) which was observed when PORTER carried multiple bags into the room.

40. At approximately 11:20 a.m., agents observed CARNES and BERRY exit room 113 (TL5), enter TV4, and drive to an auto parts store a few blocks away, where

COMPLAINT (USAO#2023R01225)
UNITED STATES V. JUSTIN CARNES - 11

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(206) 553-7970

they both entered the auto parts store. An agent saw BERRY exit the auto parts store first. BERRY walked to the passenger's side of TV4 and opened the door. After being at the open passenger's door for a moment, BERRY closed the door and began walking back toward the auto parts store. BERRY then turned around and went back to TV4 and popped the hood of TV4. BERRY climbed up onto the front bumper and was leaned over the engine compartment for a moment. BERRY then climbed down, closed the hood, and proceeded to stand on the street between the door to the auto parts store and where TV4 was parked.

41. A few moments later, CARNES exited the auto parts store and agents approached them to detain them for investigation. When the agents identified themselves to CARNES, he attempted to flee on foot, but he tripped enabling agents to detain him.

42. Upon detaining BERRY, agents patted him down for any weapons and located a black FN 5.7 pistol with tape on the handle, two pieces of tinfoil containing 31.2 gross grams of a solid white substance suspected to be cocaine, and a piece of foil containing 56.7 grams of a white powdery substance suspected to be fentanyl.

**Execution of Search Warrants on TL4, TL5, and TV7**

43. On March 28, 2024, at 2:50 p.m. United States Judge Magistrate Grady J. Leupold authorized search warrants for TL4 (CARNES' storage unit), TL5 (CARNES' Mill Village Motel room), TV4 (CARNES' Silverado), TV7 (CARNES' RV), and CARNES' person. Agents carried out the search warrants shortly after.

44. In TL5 (CARNES' Motel Room) agents found a backpack on the top shelf of the closet that contained: (1) a Ziploc bag containing 2,032.4 gross grams of a crystal-like substance that field tested positive for methamphetamine, (2) a Ziploc bag containing 872 gross grams of a loose white powdery substance and a rectangular brick containing white powder suspected to be fentanyl, (3) three plastic Ziploc bags containing 257.6 gross grams of a white powder that field tested positive for cocaine, (4) a Ziplock bag containing 35.4 grams of an off white chunky substance that field tested positive for

COMPLAINT (USAO#2023R01225)
UNITED STATES V. JUSTIN CARNES - 12

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(206) 553-7970

cocaine, and (5) a black digital scale with white powder suspected to be fentanyl. Additionally, law enforcement found indicia of drug trafficking throughout the motel room including the following: (1) 46.6 grams of loose crystal chunks suspected to be methamphetamine and a small plastic bag containing 50.4 gross grams of a chunk of a white substance, suspected to be fentanyl, located on the TV stand, (2) a small plastic container containing two chunks of suspected methamphetamine located on the bed, (3) a black and silver scale with white powder substance suspected to be fentanyl located on the nightstand, and (4) a black scale with white powdery substance on it suspected to be fentanyl located inside a Gucci backpack in the closet.

45. In TL5 (CARNES' storage unit) agents found a brick-shaped press. Based on my training and experience, I know that this type of press is used by drug traffickers to pack powdered narcotics into condensed bricks in either pound or kilogram quantities.

46. In CARNES' RV (TV7) agents found a .22 caliber handgun with a round in the chamber and multiple rounds in the magazine located in a cabinet next to the driver's seat, a blue M30 pill suspected to contain fentanyl in a drawer next to the bed, drug paraphernalia, and a red scale with white powdery residue suspected to be fentanyl located in the kitchen.

**CARNES & BERRY Both Admit to Trafficking Narcotics from Oregon**

47. After being read his Miranda rights, CARNES admitted that he drove down to Portland on March 28, 2024, to pick up two and a half kilograms of fentanyl powder and five pounds of methamphetamine. CARNES also admitted that he frequently made these drug picks up in the middle of the night as corroborated by the electronic surveillance of TT17 mentioned previously.

48. After being read his Miranda rights, BERRY admitted to being a drug user since approximately 2012. BERRY said several weeks ago he began hanging out with CARNES consistently and doing small errands for him in exchange for drugs. BERRY said in the last few weeks he made multiple trips to Oregon with CARNES. BERRY said

COMPLAINT (USAO#2023R01225)
UNITED STATES V. JUSTIN CARNES - 13

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(206) 553-7970

1 | he and CARNES would go to a hotel or motel location and BERRY would stay in the car
2 | while CARNES would go inside. BERRY said CARNES would come back to the car
3 | with a drug load, which he and CARNES would then transport back up to Washington.

4 |     49. BERRY said on March 28, 2024, he and Porter went down to Oregon to
5 | pick up CARNES and Logsdon because CARNES and Logsdon's vehicle had broken
6 | down. BERRY said he understood that CARNES and Logdson had gone down to
7 | OREGON to pick up a drug load. After picking up CARNES and Logsdon in Oregon,
8 | BERRY, Porter, Logdson, and CARNES drove back to Eatonville, Washington in TV4.

9 |     50. BERRY said that later that morning, when he and CARNES went to the
10 | auto parts store, BERRY had come out of the auto parts store first. BERRY said he got
11 | //
12 | //

COMPLAINT (USAO#2023R01225)
UNITED STATES V. JUSTIN CARNES - 14

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(206) 553-7970

into the engine compartment of TV4, where CARNES keeps a handgun, and retrieved the black FN 5.7 pistol with tape on the handle that was later found on his person.

### III.  CONCLUSION

51. Based on the above facts, I respectfully submit that there is probable cause to believe that JUSTIN CARNES and DEREK BERRY did knowingly and intentionally conspire to distribute controlled substances, namely, methamphetamine and fentanyl, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A).

JOHN KEWLEY, Complainant
Special Agent
Drug Enforcement Administration

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offense set forth in the Complaint.

Dated this 29th day of March, 2024.

GRADY J. LEUPOLD
United States Magistrate Judge

COMPLAINT (USAO#2023R01225)
UNITED STATES V. JUSTIN CARNES - 15

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(206) 553-7970